UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KULWINDER SINGH,

               Petitioner,

            -against-

RAUL MALDONADO, *in his official capacity as
Warden, Brooklyn Metropolitan Detention Center*;
JUDITH ALMODOVAR, *in her official capacity as
Acting New York Field Office Director, U.S.
Immigration & Customs Enforcement*; KRISTI NOEM,
*in her official capacity as Secretary, U.S. Department
of Homeland Security*; TODD M. LYONS, *in his
official capacity as Acting Director of Immigration &
Customs Enforcement*; and PAMELA BONDI, *in her
official capacity as Attorney General, U.S. Department
of Justice*,

               Respondents.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-00019 (OEM)

ORELIA E. MERCHANT, United States District Judge:

      On January 2, 2026, petitioner Kulwinder Singh ("Petitioner") filed a writ of habeas corpus

pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by U.S. Immigration and

Customs Enforcement ("ICE"), the federal law enforcement agency under the U.S. Department of

Homeland Security ("DHS"). *See* Verified Petition for Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241, Dkt. 1 (the "Petition" or "Pet."). Petitioner asserts that ICE unlawfully detained

him on December 24, 2025, "without the ability to present himself at a bond hearing" and "without

an individualized assessment that he posed a flight risk or a danger to the community," in violation

of the Fifth Amendment of the U.S. Constitution (the "Fifth Amendment") and the Administrative

Procedure Act (the "APA"), 5 U.S.C. §§ 706(2)(A)-(D). *Id.* at 2; *see id.* at 5-8. He seeks

immediate release from custody, fees and costs, and any other relief the Court deems just and

proper. *See id.* at 8-9. For the following reasons, the Petition is granted.

## BACKGROUND

The facts of this case are undisputed.  Petitioner is an Indian national who entered the United States by crossing the border near Otay Mesa, California, without inspection on or about March 23, 2024.  *Id.* at 2; Letter from Respondents to the Court at 1 (Jan. 7, 2026), Dkt. 9 (the "Letter Opposition" or "Letter Opp'n").  The U.S. Border Patrol ("USBP") operating in the San Diego Border Patrol's area of responsibility encountered Petitioner and provided him with a Notice to Appear, Form I-862, on March 24, 2024, which charged him with inadmissibility pursuant to the Immigration and Nationality Act (the "INA") § 212(a)(6)(A)(i) and placed him into removal proceedings, with an initial master calendar hearing scheduled for July 8, 2025.  *See* Letter Opp'n at 1; Notice to Appear at 1, Dkt. 9-2.  The Notice to Appear specifically identified Petitioner as "an alien present in the United States who has not been admitted or paroled."  Notice to Appear at 1, Dkt. 9-2.  Petitioner was then served with an Order of Release on Recognizance, Form I-220A, "in accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations" and released.  Order of Release on Recognizance, Dkt. 9-3; *see* Letter Opp'n at 1.

On July 3, 2025, five days before Petitioner was due to appear in Immigration Court, the Executive Office for Immigration Review ("EOIR") canceled the initial master calendar hearing and informed Petitioner that he would receive a new hearing date.  *See* Letter Opp'n at 1.

Approximately a year and a half after Petitioner entered the United States, on December 24, 2025, ICE arrested him near 84-12 Commonwealth Boulevard, Jamaica, New York, 11426.  *Id.* at 2.  According to Respondents, "ICE officers, along with Special Agents with the Federal Bureau of Investigations . . . and the Drug Enforcement Agency . . . were conducting surveillance operations in Queens, New York and tasked with locating an individual" when they "began a

consensual encounter with the Petitioner to gain information on their intended target." *Id.* During that exchange, "Petitioner identified himself and openly admitted that he was born in India, is a citizen of India, and illegally entered the United States." *Id.* ICE subsequently ran a record check confirming that Petitioner "had no legal admission into the United States" and issued a Form I-200 warrant for Petitioner's arrest, "authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations." Warrant for Arrest of Alien, Dkt. 9-4. Petitioner was then arrested and taken to "26 Federal Plaza for processing." *Id.*; *see* Warrant for Arrest of Alien, Dkt. 9-4.

On December 25, 2025, Petitioner was served with a copy of the arrest warrant and transferred to Delaney Hall Detention Facility in Newark, New Jersey, "while awaiting long-term bedspace" at the Metropolitan Detention Center (the "MDC") in Brooklyn, New York. Letter Opp'n at 2. That same day, ICE notified EOIR that Petitioner would be detained at the MDC "so EOIR could transfer Petitioner's removal proceedings to the Varick Street Immigration Court, which has administrative control over cases where the alien is detained at MDC." *Id.* EOIR then rescheduled Petitioner for a hearing on January 16, 2026. *Id.*[1] Petitioner was transferred to the MDC on December 30, 2025, and remains there today. *Id.*

## PROCEDURAL HISTORY

Petitioner commenced this action on January 2, 2026. *See generally* Pet. He challenges the legality of his detention, arguing that Respondents violated his Fifth Amendment procedural and substantive due process rights and the APA by detaining him since December 24, 2025, "without any hearing to determine whether his ongoing detention is justified" and without any

---

[1] At oral argument, Petitioner's counsel notified the Court that this hearing date has been pushed back to January 27, 2026. Transcript of Civil Cause for Order to Show Cause Before the Honorable Orelia E. Merchant United States District Court Judge at 22:7-14.

individual determination that he is a flight risk or risk to public safety.  *Id.* at 6; *see id.* at 5-8. Petitioner requests that the Court "[e]njoin Respondents from transferring [him] outside of the jurisdiction of the Eastern District of New York pending the resolution of this case"; "[i]ssue a writ of habeas corpus directing Respondents to provide [Petitioner's] immediate release from custody"; "[a]ward [Petitioner] attorney's fees and costs under the Equal Access to Justice Act"; and "[g]rant any other and further relief that this Court deems just and proper." *Id.* at 8-9.  In support of his Petition, Petitioner additionally filed an application for an order to show cause.  *See* Application for Order to Show Cause, Dkt. 3.

On January 2, 2026, the Court issued an order to show cause ordering Petitioner to serve a copy of the order and Petition on Respondents that same day; ordering Petitioner to file a proof of service by January 5, 2026; ordering Respondents to file a return to the order to show cause why the Petition should not be granted by January 5, 2026; and ordering the parties to appear before the Court for a hearing on January 6, 2026, at 2:00 p.m.  *See* Order to Show Cause, Dkt. 4 (the "Order to Show Cause").  The Court additionally ordered Respondents not to remove Petitioner from this District "until further order of this Court."  *Id.*

Petitioner filed acknowledgment of service on January 4, 2026.  *See* Email from Richard Hayes to Michael Goldman (Jan. 3, 2026), Dkt. 5.  Respondents subsequently filed a motion for an extension of time to file a response to the Petition, *see* Letter from Respondents to the Court (Jan. 4, 2026), Dkt. 6, which the Court granted on January 5, 2026.

"[I]n lieu of a formal responsive memorandum of law," Respondents thereafter filed a five-page letter response on January 7, 2026, "to conserve judicial and party resources, and to expedite the Court's consideration of this case, in light of this Court's rulings on the principal legal issues in *J.U. v. Maldonado*, [25-CV-04836 (OEM), 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025),] and

4

*Artiga v. Genalo*, [25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025)]." Letter Opp'n at 1. Petitioner filed a one-page letter reply that same day, stating his agreement that *J.U.* and *Artiga* "control the outcome of this matter" and asserting that "Respondents offer no authority that persuasively undermines" them in light of "the increasingly large number of decisions issued by every other Judge in the Eastern and Southern Districts of New York in favor of non-citizen habeas petitioners in similar situations." Letter from Petitioner to the Court (Jan. 7, 2026), Dkt. 10 (the "Letter Reply").

The following day, the Court issued an order directing Respondents to file, by January 12, 2026, at 5:00 p.m., "a memorandum of law that responds to the particular facts and arguments raised by [the Petition]." Order, Jan. 8, 2026. The Court additionally rescheduled the hearing to January 15, 2026, at 11:30 a.m. *Id.*

Respondents filed their memorandum of law by the Court-ordered deadline. *See generally* Memorandum of Law in Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Issued, Dkt. 11 (the "Opposition" or "Opp'n"). In their expanded filing, Respondents argue that Petitioner was lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and that his due process rights were not violated. *Id.* at 8-24. Respondents additionally assert that the APA is not the "proper vehicle" for a habeas claim. *Id.* at 24-25.

On January 13, 2026, Petitioner filed a reply, asserting that Petitioner's detention is pursuant to 8 U.S.C. § 1226(a) and that Respondents offer no "credible defense" to Petitioner's due process arguments. Petitioner's Reply in Support of Petition for Writ of Habeas Corpus at 8, Dkt. 12 (the "Reply"); *see id.* at 2-10. Petitioner reiterates that he is seeking immediate release, as well as attorneys' fees and costs. *See id.* at 2, 10.

The Court held a hearing on the Order to Show Cause on January 15, 2026, at 11:30 a.m. *See generally* Transcript of Civil Cause for Order to Show Cause Before the Honorable Orelia E. Merchant United States District Court Judge ("Tr.").

## DISCUSSION

The parties' briefs raise two main issues: (1) whether Petitioner is detained under 8 U.S.C. § 1226 or 8 U.S.C. § 1225 and (2) whether Petitioner's due process rights have been violated. The Court addresses each in turn.

### A. Petitioner Is Detained Under 8 U.S.C. § 1226.

The parties disagree as to the statute governing Petitioner's detention. Petitioner argues that the plain meaning and structure of 8 U.S.C. § 1226 ("§ 1226") and 8 U.S.C. § 1225 ("§ 1225") indicate that § 1226 applies and directs this Court to the "*hundreds* of federal district courts across the country [that] have outright rejected the position Respondents are now taking." Reply at 2; *see id.* at 2-7; Pet. at 6-7. Respondents assert the opposite: that the plain meaning of these statutes indicates that § 1225 applies. Opp'n at 12-24.

### 1. Statutory and Regulatory Framework of § 1225 and § 1226

The two principal statutes that govern the detention of noncitizens pending removal proceedings are § 1225 and § 1226. The parties agree that the two provisions are exclusive; a noncitizen can only be subject to § 1225 or § 1226, not both. Tr. at 12:6-19 (When asked whether the provisions were mutually exclusive, Respondents' counsel stated that an individual "cannot be detained pursuant to both at the same time," which Petitioner's counsel said he "agree[d] with").

#### a) Section 1225

Section 235(a) of the INA, codified at § 1225, provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." § 1225(a)(1). Applicants for admission

6

are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1225(b)(1) applies to aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *id.* (citing § 1225(b)(1)(A)(i)), and other aliens who receive special designation by the Attorney General, *id.* (citing § 1225(b)(1)(A)(iii))*.*  Section 1225(b)(2) is a "catchall provision" that applies to all other applicants.  *See id.* (explaining that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)").

Both §§ 1225(b)(1) and (b)(2) require the detention of persons deemed to be applicants for admission.  Applicants for admission covered by § 1225(b)(1) are removed "without further hearing or review" under an expedited removal process, unless the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that alien is referred for an asylum interview.  §§ 1225(b)(1)(A)(i)-(ii).  "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'"  *Jennings*, 583 U.S. at 287 (quoting § 1225(b)(1)(B)(ii)).  However, applicants who do not assert such claims or whom the immigration officials "found not to have such a fear," this statutory provision requires that they "shall be detained . . . until removed."  §§ 1225(b)(1)(A)(ii), (B)(iii)(IV).

Section 1225(b)(2) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  § 1225(b)(2)(A).

Regardless of which subsection of § 1225(b)'s mandatory detention applies to a particular noncitizen, that noncitizen may nonetheless be, in the discretion of the Secretary of Homeland

Security, "parole[d] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288. Once the purposes of parole have been achieved, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

### b) Section 1226

Section 1226(a) governs a separate nonmandatory detention scheme and provides the "default rule" for detaining and removing aliens "already present in the United States." *Jennings*, 583 U.S. at 303. It provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." *Id.* §§ 1226(a)(1)-(2). Section 1226(c) contains several exceptions for persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 303.

### 2. Lawfulness of Petitioner's Detention

The record before the Court, including Respondents' treatment of Petitioner since his arrival in the United States in March 2024, establishes that Petitioner was detained pursuant to the discretionary authority under § 1226(a). As outlined above, the parties do not dispute the facts: Petitioner entered the United States without inspection on or about March 23, 2024. *See* Letter Opp'n at 1; Reply at 1. On March 24, 2024, USBP agents issued Petitioner a Notice to Appear, which identified him not as "an arriving alien" but as "an alien present in the United States who

has not been admitted or paroled" and released him on his own recognizance "[i]n accordance with section 236 of the Immigration and Nationality Act," codified at § 1226. Order of Release on Recognizance, Dkt. 9-3; *see also* Notice to Appear, Dkt. 9-2. Accordingly, all of Respondents' actions with respect Petitioner in March 2024 were taken pursuant to § 1226(a), as none of the records related to Petitioner's 2024 arrest and detention make any reference at all to § 1225(b).

The same is true for Petitioner's current arrest and detention. Petitioner's arrest record is devoid of any reference to § 1225, and Respondents have not presented any records showing that Petitioner was detained pursuant to § 1225. *See* Warrant for Arrest of Alien, Dkt. 9-4 (addressed to officers "authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act"); *see, e.g.*, *Hyppolite v. Noem*, 25-CV-4304 (NRM), 2025 WL 2829511, at *8 (E.D.N.Y. Oct. 6, 2025) ("For example, Form I-200, which is the arrest warrant authorizing Hyppolite's detention, was directed to immigration officers 'authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act . . . to serve warrants of arrest for immigration violations.' Crucially, the statutory codification of INA 236 is 8 U.S.C. § 1226. Thus, the very arrest warrant provided to Hyppolite by Respondents on July 8, 2025 — the day of his detention — indicated that he was being detained under the *discretionary* detention provision of § 1226." (citations omitted)); *Ye v. Maldonado*, 25-CV-6417 (AMD), 2025 WL 3521298, at *5 (E.D.N.Y. Dec. 8, 2025) (concluding the same).[2]

If Petitioner was arrested and detained pursuant to § 1225(b), that authority would have mandated that he be detained or an individual determination made to grant him parole. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b)-(c); *Biden v. Texas*, 597 U.S. 785, 806 (2022)

---

[2] In response to this evidence, Respondents argue that it is "not dispositive" and that they are free to change their opinion. Opp'n at 22. As another Judge in this District recently observed, Respondents are "free to argue" this point, but "the fact that the government took precisely the opposite position is a relevant factor for the Court's consideration." *Ye*, 2025 WL 3521298, at *5.

(explaining that DHS's authority to parole applicants for admission is "not unbounded" because "DHS may exercise its discretion to parole applicants 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit'" (quoting 8 U.S.C. § 1182(d)(5)(A))).  But nothing in the record indicates that Petitioner was granted parole based on a case-by-case determination for urgent humanitarian reasons or public benefit.  Furthermore, such parole is granted only on a *temporary* basis, and there is no evidence that any "expiration of time" was placed upon Petitioner's release such that his parole automatically terminated.  *See* 8 C.F.R. § 212.5(e)(1); 8 U.S.C. § 1182(d)(5)(A) (providing that "such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled"); *see* 8 C.F.R. 212.5(c) (Officials may, "after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, [8 U.S.C. § 1182(d)(5)(A)], any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate.").  Respondents do not contend that any notice was provided to Petitioner lawfully revoking any such alleged parole.  *See id.* § 212.5(e)(2)(i); Letter Opp'n; Opp'n.  Thus, the fact that Respondents complied with none of the procedures prescribed by 8 U.S.C. § 1182(d)(5)(A) and its implementing regulations when releasing Petitioner in March 2024 and detaining him in December 2025 supports the conclusion that Petitioner was not subject to § 1225(b)(2)'s mandatory detention, but rather to § 1226(a)'s discretionary detention.

Indeed, Petitioner's release on recognizance is incompatible with a release on parole into the United States within the meaning of 8 U.S.C. § 1182(d)(5)(A).  Rather, release on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's

discretionary detention. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 191, 198 (2d Cir. 2011) (distinguishing between being paroled into the United States and being released on recognizance, noting that they serve "distinct functions"); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486-91 (S.D.N.Y. 2025) (finding, where petitioner was initially arrested under INA § 236 and later released on recognizance, that petitioner was detained under § 1226); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (concluding, where a petitioner was released on her own recognizance, that it "does not indicate that she was examined or detained under section 1225 but instead explicitly premises her release on section 1226 ('[i]n accordance with section 236 of the Immigration and Nationality Act')"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding that a noncitizen released on an "Order of Release on Recognizance" necessarily must have been detained and released under § 1226, including because he was not an "arriving alien" under the regulations governing § 1225 examinations); *Gomes v. Hyde*, 25-CV-11571 (JEK), 2025 WL 1869299, *2 (D. Mass. July 7, 2025) (noting that "the government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole"); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were . . . released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226 (a)(2)(B)[.]").

To the extent that Respondents argue that they should be permitted to clarify the detention authority that applies in this case, the distinction between a release on recognizance under § 1226 and release on parole under § 1225 is imbued with legal significance. These two provisions serve fundamentally different functions. Section 1226(a) "authorizes detention *only* '[o]n a warrant issued' by the Attorney General," *Jennings*, 583 U.S. at 302 (emphasis added), while § 1225(b) contains no warrant requirement, *see* § 1225(b). Thus, the use of a warrant to arrest and detain

Petitioner is further evidence that Petitioner could only be detained pursuant to § 1226(a). *See Martinez*, 792 F. Supp. 3d at 215 (noting that the distinction between release on recognizance and parole is "more than an [immigration] officer's choice of paperwork" but instead is legally distinct); *see also Hasan v. Crawford*, 800 F. Supp. 3d 641, 655 (E.D. Va. 2025) ("Given the significant distinction between being paroled into the United States under § 1182(d)(5)(A) and being released on recognizance under § 1226(a)(2)(B), DHS's consistent citations to § 1226(a) on [the petitioner's] paperwork does not support the argument that the federal respondents actually intended for him to be paroled into the United States pursuant to § 1182(d)(5)(A).").

In its opposition to the Petition and at oral argument, Respondents nonetheless argued that Petitioner was all along detained pursuant to § 1225(b)(2)(A)'s mandatory detention, despite its own records stating the contrary, because Petitioner is an "applicant for admission" to the United States as he is present in the country without having been admitted or paroled; because Petitioner's release on his own recognizance does not change his status as an applicant for admission; because Petitioner has not demonstrated to an examining immigration officer that he is "clearly and beyond a doubt entitled to be admitted," his detention is mandatory under § 1225(b)(2)(A); and because amendments to the immigration laws support the conclusion that Congress did not intend for aliens like Petitioner to be treated better than other aliens. Opp'n at 12-24. In sum, Respondents argue that Petitioner has never "lawful[lly] ent[ered]" the United States. *Id.* at 12.

Respondents' novel and expansive construction of § 1225(b)(2)(A) fails to withstand scrutiny because it disregards the plain meaning of that provision, would render § 1226 and a recent amendment to it superfluous, and is inconsistent with Supreme Court's prior statutory interpretations. As discussed above, § 1225(a) defines an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States" and in

12

turn, § 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

Respondents' argument that every noncitizen who has not been lawfully admitted into the United States continues to be a noncitizen "seeking admission" appears to equate "applicant for admission" with "seeking admission." But such a reading would render the phrase "seeking admission" in § 1225(b) superfluous—that is, it is not doing any work in the statutory text, which would violate the rule against surplusage. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("'[E]very clause and word of a statute' should have meaning." (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))). It is a basic canon of statutory interpretation that a statute should be construed as to give effect to all its provisions and that no part will be superfluous. *Corley v. United States*, 556 U.S. 303, 314 (2009). If an interpretation of one provision "would render another provision superfluous, courts presume that interpretation is incorrect." *Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010). This presumption is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

Under Respondents' reading and application of § 1225(b)(2), nearly all noncitizens already in the United States, but not previously admitted or entered illegally, would be subject to § 1225(b)'s mandatory detention. If, as Respondents submit, § 1225(b)'s mandatory detention provision applies to all noncitizens who remain applicants for admission to the United States, this would render superfluous the mandatory detention provisions found in §§ 1226(c)(1)(A), (D), and (E). Section 1226(c)(1)(A) provides that the "Attorney General shall take into custody any alien

13

who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," such as crimes of moral turpitude and offenses relating to controlled substances. As *Hasan* explained, "[t]his mandatory detention under § 1226(c) would be unnecessary if all persons who have not been admitted into the United States were already subject to § 1225(b)'s mandatory detention provisions." 800 F. Supp. 3d at 656. Likewise, Congress amended § 1226 last year with the Laken Riley Act by adding § 1226(c)(1)(E), which makes noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions in 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed certain crimes. § 1226(c)(1)(E). Even under this new amendment, only when the inadmissibility and the criminal conduct criterion are both satisfied did Congress intend for mandatory detention to be triggered. *See Gomes*, 2025 WL 1869299, at *6. Thus, Respondents' theory that § 1225 applies to noncitizens who are arrested on a warrant while residing in the United States would make § 1226(c)(1)(E)'s criminal conduct requirement superfluous, thereby "nullify[ing] a statute Congress enacted" just last year. *Id.* at *7.[3] In sum, the Court concludes that Respondent's reading of the relationship between § 1226 and § 1225 would contravene Congress's intent that, except as provided in § 1226(c), § 1226(a)'s discretionary framework applies to all citizens arrested on a warrant while residing in the United States.

Finally, Respondents' interpretation of the statutory scheme does not square with more than a century of Supreme Court's holdings interpreting the relationship between § 1225(b) and § 1226(a). The issuing officer did not deem Petitioner to be an "arriving alien" but instead deemed him to be "present" in the United States. Notice to Appear, Dkt. 9-2. The Supreme Court has

---

[3] In opposition, Respondents focus on the purported difference in "the avenue and governing standards by which the covered alien may be released" under § 1226(c) as opposed to § 1225(b)(2)(A). Opp'n at 21. This Court finds this unpersuasive for the same reasons articulated above: if Respondents' statutory interpretation argument were correct, there would be no need for the recent congressional amendment.

14

interpreted the language of noncitizens "seeking admission" to mean something different from those already present in the United States. In 1958, the Court held that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality[;] [i]n the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court later explained in *Zadvydas v. Davis* that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." 533 U.S. 678, 693 (2001) (noting that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). In *Jennings*, the Supreme Court reaffirmed this principle, stating that § 1225(b) governs "aliens seeking admission into the country" whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings. 583 U.S. at 289. And, as recently as 2020, in *Department of Homeland Security v. Thuraissigiam*, where a petitioner was arrested a mere 25 yards after crossing the border, the Supreme Court held that he was still "at the threshold of initial entry" and, although technically in the country, could still be treated as "an alien seeking initial entry." 591 U.S. 103, 107, 139 (2020). Contrary to Respondents' position, *Thuraissigiam* did not upend more than a century of precedent but rather held that noncitizens detained close to the border "shortly after unlawful entry" have not yet "effected an entry." *Id.* at 140. It continues to be the law in this country that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Here, the Court

15

finds that Petitioner "effected entry" into the United States in the past year since his release, *see Thuraissigiam*, 591 U.S. at 140, and therefore was "already in the country," *see Jennings*, 583 U.S. at 289.

Respondents attempt to escape this conclusion by directing the Court to four recent, nonbinding decisions in this Circuit: *Chen v. Almodovar*, 1:25-cv-8350-MKV, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025); *Candido v. Bondi*, 25-CV-867 (JLS), 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025); *Liang v. Almodovar*, 1:25-cv-09322-MKV, 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025); and *Chen v. Almodovar*, 25 Civ. 9670 (JPC), 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026). *See* Letter Opp'n at 3 n.2; Tr. at 4:2-8. As Petitioner has pointed out, however, these four cases are outliers in this Circuit, *see* Letter Reply at 1 n.1 (collecting cases); Reply at 2-3 (same), which has otherwise adopted the reasoning stated herein and rejected Respondents' position, *see, e.g.*, *Crespo Tacuri v. Genalo*, 25-CV-06896 (NCM), 2026 WL 35569, at *3 (E.D.N.Y. Jan. 6, 2026) ("The judges that have considered this issue within the Eastern District of New York in the last four months have unanimously rejected the government's interpretation."); *Barco Mercado v. Francis*, 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting at that time that the government's "new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

Respondents also cite a recent Board of Immigration Appeals (the "BIA") decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), as support for the proposition that Petitioner is an "applicant for admission" and therefore can be detained pursuant to § 1225, regardless of

16

how many years he has been present in the United States.  Opp'n at 16-17.  In that case, the BIA held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to § 1225(b)(2)(A).  *Hurtado*, 29 I. & N. Dec. at 227.  While the BIA decision might provide helpful guidance, this Court is not bound by it, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86, 400-01 (2024) (Interpretation of the meaning of a statute belongs to the "independent judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities."), particularly where the BIA made prior pronouncements to the contrary, *see Hurtado*, 29 I. & N. Dec. at 225 n.6 ("We acknowledge that for years Immigration Judges have conducted [§ 1226(a)] bond hearings for aliens who entered the United States without inspection."); *Martinez*, 792 F. Supp. 3d at 222 (discussing prior BIA decisions).  Under *Loper Bright*, the Court is not required to defer to the BIA's recent interpretation, particularly when that view has not "remained consistent over time."  603 U.S. at 386; *id.* ("'[T]he longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" (citations omitted)); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (The "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

Accordingly, the Court finds that, under the circumstances here, Petitioner may only be subject to detention as a matter of discretion under § 1226(a).

### B. Petitioner's Detention Violates the Due Process Clause.

The Court now turns to whether, under the circumstances of this case, ICE's detention of Petitioner violates his due process rights.  The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of

17

law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. It is well established that due process protections extend to noncitizens, including those in removal proceedings. *See id.* at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings."). "Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." *Valdez v. Joyce*, 25-CV-4627 (GBD), 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) (citing *Lopez v. Sessions*, 18-CV-4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) (holding that "Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")); *see Lopez Benitez*, 795 F. Supp. 3d at 491-92. The Supreme Court has repeatedly—and recently—reiterated this principle. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Flores*, 507 U.S. at 306)).[4]

---

[4] Respondents argue that Petitioner's detention comports with due process because he is "treated for constitutional purposes as if stopped at the border." Opp'n at 8. However, this "entry fiction" doctrine, *id.* at 8 n.2, is neither relevant to the statutory analysis set out above nor applicable to the due process analysis. As other courts in this Circuit have explained, the entry fiction doctrine "dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted." *J.G.O. v. Francis*, 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025). Whatever procedure Congress authorized is, under this doctrine, due process. *Id.* Here, however, the question is what process Congress authorized, so "even assuming that the entry fiction would apply," it does not affect the "*statutory* analysis." *Id.*

Moreover, the entry fiction doctrine is inapplicable here because Petitioner was released on his own recognizance in March 2024 and arrested and detained in December 2025 in New York, far from the California border he initially crossed. The distinction between parole under 8 U.S.C. § 1182(d)(5)(A), on the one hand, in which the Government reserves rights, and release on recognizance (another name for "conditional parole" under 8 U.S.C. § 1226(a)), on the other hand, "mak[es] all the difference." *Ye*, 2025 WL 3521298, at *6-7 (quoting *Zadvydas*, 533 U.S. at 693); *see also, e.g.*, *J.G.O.*, 2025 WL 3040142, at *4; *Y-C- v. Genalo*, 25-cv-06558 (NCM), 2025 WL 3653496, at *5-6 (E.D.N.Y. Dec. 17, 2025).

The Second Circuit has held that the *Mathews v. Eldridge* three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).  The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

To the extent that Respondents argue that Petitioner's detention does not violate the Due Process because he was subject to mandatory detention, the Court has rejected that premise. Respondents do not dispute that, to the extent DHS seeks to detain a noncitizen pursuant to the discretionary authority provided by 1226(a), ICE must follow certain procedural safeguards.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  A person's liberty cannot be abridged without "adequate procedural protections."  *Zadvydas*, 533 U.S. at 690.  Petitioner contends that he was wrongfully detained "without an individualized assessment that he posed a flight risk or a danger to the community and, therefore, without due process."  Pet. at 2.  Petitioner's liberty interest is clearly established.  *See Valdez*, 2025 WL 1707737, at *3.

With respect to the second prong of the *Mathews* test, the record unequivocally demonstrates, and Respondent concedes both in its submissions and at oral argument, that no individualized determination was made prior to or contemporaneously with the decision to detain

19

Petitioner in December 2025, and there was no change in circumstances from the time DHS released Petitioner on his own recognizance in March 2024 to his re-arrest and detention in December 2025. Tr. at 12:20-13:5 (In response to the Court asking whether any individualized determination was made, Petitioner's counsel noted that "no determination that he was a flight risk or a danger to society" was made, to which Respondents replied, "That's correct."); *id.* at 18:1-19:3 (In response to the Court asking whether circumstances changed between Petitioner's initial encounter with USBP on or around March 23, 2024, and his arrest and detention on December 24, 2025, Respondents' counsel confirmed that there was "no other activity").[5] Thus, the risk of erroneous deprivation of Petitioner's liberty interest is high. *See Lopez*, 2018 WL 2932726, at *11 (finding a risk of erroneous deprivation where petitioner was re-detained absent a change in circumstances, procedure, or evidentiary findings).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 [] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez*, 2025 WL 1707737, at *4 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, as stated above, nothing suggests that Petitioner is a flight risk or a danger to the community. Simply put, there is no evidence that Petitioner posed a risk of flight or danger to the community sufficient to justify his detention. Thus, Respondents have failed to show a significant interest in Petitioner's continued detention.

---

[5] At oral argument, Petitioner's counsel notified the Court for the first time that Petitioner filed an asylum application at some point after being released on his own recognizance on March 24, 2024, and before being arrested by ICE on December 24, 2025. Tr. at 18:1-19:12. As the details of this asylum application have not been presented to the Court, the Court does not discuss the application or its underlying facts herein.

Respondents' ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights. *See id.* at *4; *Lopez*, 2018 WL 2932726, at *15. Given the deprivation of Petitioner's liberty, formerly granted and approved by Respondents, the absence of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy. *See Valdez,* 2025 WL 1707737, at *4.[6]

## CONCLUSION

For the foregoing reasons, the Petition is granted. Respondents are ordered to immediately release Petitioner from custody. By January 30, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released. Counsel for Petitioner may file an application for attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, within the time provided by the Local Rules.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

January 29, 2026
Brooklyn, New York

---

[6] Because the Court determines that Petitioner's detention violates his due process rights, it need not address his claim under the APA. *See, e.g., Valdez*, 2025 WL 1707737, at *2 n.4 (declining to address an APA claim after determining that the petitioner's detention violated due process); *O.F.B. v. Maldonado*, 25-CV-6336 (HG), 2025 WL 3277677, at *3 n.4 (E.D.N.Y. Nov. 25, 2025) (same).